## L. T. EDWARDS v. B. J. NORTON.

1. PAROL CONTRACT FOR SALE OF LAND.—See discussion of princi-
   ples governing suits to enforce such contracts.
2. EVIDENCE OF PAROL SALE OF LAND.—The unsupported oath of
   the plaintiff to a parol contract for the sale of land, will not warrant
   a decree for specific performance.
3. CASE APPROVED.—Moreland v. Barnhart, 44 Tex., 283, approved.
4. WORK AND LABOR by plaintiff done upon land cannot be considered
   as a payment made to the defendant in an action to enforce a parol
   sale of the land upon which the work and labor were expended.

APPEAL from Wood. Tried below before the Hon. Z.
Norton.

July 19, 1875, Norton brought suit against Edwards for
specific performance of an alleged parol sale of a town lot in
Mineola.

The petition sets out, substantially, that in July, 1873, plain-
tiff and defendant made a contract, whereby defendant agreed
to purchase lot No. 11, in block No. 3, in Mineola, of the H.
& G. N. R. R. Co., (which owned the lot and held it at $160,)
for plaintiff at $160, and ten per cent. interest, to be paid in
sixty days, and to make to plaintiff a good title; that defend-
ant did buy the lot, and took title in his own name; that
plaintiff took possession of the same under the contract, and
in good faith made permanent and valuable improvements
thereon, in value $764.72; that defendant had refused to
perform his part of the contract, and had evicted plaintiff.
Prayer for specific performance, and in alternative to estab-
lish a lien for the material and labor used in the improve-
ments.

Pending the suit, plaintiff obtained an injunction, and had
a receiver appointed to take possession of the property, col-
lect rents, &c. The two suits were consolidated.

The defendant demurred, pleading a general denial; spe-
cifically denied the alleged contract for the sale, and all the
acts alleged as done under it; pleaded a claim, giving items,

against plaintiff, for goods furnished and money advanced him, in aggregate to $725.43.

On the trial, Norton testified, in his own behalf, that in July, 1873, defendant proposed to him to select a lot in the town of Mineola, and he (defendant) would pay for it; that he and defendant went together, and he pointed out to defendant the lot in controversy as the one he would select; defendant told him to go to work and improve it, and he would pay for it; that he could get it for $160, on a credit of sixty days; and that he (defendant) would make plaintiff a title to it as soon as he could get the title himself, if plaintiff would pay him the $160, and ten per cent. interest on it.

Plaintiff immediately commenced work, building on the lot after clearing it off, and put up a house at once. Just after he went into possession of the lot, defendant wanted some lumber, which plaintiff had near the lot, to finish a storehouse; and plaintiff let him have lumber amounting to some $240, and defendant agreed to take it for the $160 due from plaintiff to defendant for the lot, and he (defendant) would pay the excess.

That afterwards, defendant obtained title to the lot. He built another house on the lot, and let defendant rent one of the houses to Deihl for $50 per month shortly afterwards; that he finished the buildings on the lot in the fall of 1873. He built three houses on the lot. He learned immediately, that a lady in Quitman, Mrs. Terrell, wanted to rent the houses, and he came up to Quitman and leased them to her at $75 per month. This was in the fall of 1873. Before she moved into the house, he did not have a passage or middle room completed, and she stated it must be, for convenience, and he went to work and completed it.

That defendant Edwards furnished nothing but two kegs of nails, three sets of strap-hinges, and one lock. Plaintiff furnished all the lumber, &c., with this exception, for the entire buildings. He continued to demand title of defendant, but defendant kept putting plaintiff off, until he (defendant)

got into possession, when he absolutely refused to make him title, and claimed the property as his (defendant's) own. That plaintiff held possession of the premises for about twelve months after he completed the buildings; he then removed to Terrell, some time in the fall of 1874, and gave defendant the key. Defendant was generally plaintiff's agent to rent the property, and he left the key with him to lease the property for plaintiff. Mrs. Terrell paid plaintiff $135, in the way of board, for the rent, and, by his permission, paid the balance to defendant. Defendant was in Mineola during the time plaintiff was building on the lots, and never gave any directions about the buildings, or offered to pay him anything for the building of the houses or other improvements on the lot, and never claimed the same until he got possession as aforesaid.

Cross-examined: Witness and defendant were warm friends, and that he had the utmost confidence in defendant at the time of the contract, and when he made the improvements on the lot; that he loaned defendant $175 to pay for freight on goods that defendant had on the railroad platform at the depot, when defendant first reached Mineola; that plaintiff borrowed $20 of another party, which defendant paid back; the balance defendant has never paid. This was about one month before the making of the contract in relation to the lot, and when defendant first came to Mineola and brought his goods there. He also let defendant have $60 in money, for which defendant gave his receipt, which has never been returned. That he had no dealings with defendant; that defendant paid nothing to G. A. Grinstream for lumber for plaintiff, but plaintiff had paid Grinstream for lumber in goods and other articles that he got from Dockery and others; that Grinstream was owing plaintiff some $280, at the time defendant came to Mineola, for supplies and money furnished him, which was afterwards paid by Grinstream in lumber; that he had no dealings with defendant, except the nails, &c., that he got for the houses; that he had a conversation with

Grinstream about forming a partnership with him in build-
ing the houses, but had some conversation with another in
regard to Grinstream's standing, and declined to make any
arrangements with him; recollected having a conversation
with Grinstream in defendant's presence, but did not tell him
that he (plaintiff) did not own the lot. He and defendant
were warm personal friends at the time of the contract and
the time he built the houses; had never seen defendant be-
fore he (defendant) reached Mineola, one month before this
contract. At this time, did not trade with defendant, except
as aforesaid. That he completed the buildings on September
28, 1873; that he was in possession about twelve months
after he built the houses, and that defendant was in posses-
sion twenty-two months before the injunction suit in this
case; that he had sworn that, and thought it was correct.

John P. Williams, for plaintiff, stated "that Mrs. Terrell
wanted a place, and he saw her afterwards in possession of
this place."

The defendant, for himself, testified "that he had never
made such contract with plaintiff as stated by him; that he
(defendant) furnished all the lumber to build the houses; paid
Ira Johnson $150 for the lot, on six months' credit, not long
before plaintiff built the houses, and got a deed from Johnson
in his (witness') own name; that he paid the hands for the work
and labor on the house, except the plaintiff; paid all for the
lumber, shingles, and all the material that was used in building
the houses; paid G. A. Grinstream $280 for lumber to build
the houses; that plaintiff told Grinstream, in presence of de-
fendant, that he (plaintiff) did not own the lot, and requested
defendant to pay Grinstream for the lumber; that plaintiff
had never rented the houses to any one except Mrs. Terrell, by
his (defendant's) request, as he was going to Jefferson; that
afterwards Mrs. Terrell closed the trade, and made the con-
tract with him, (defendant,) and that he allowed Mrs. Terrell
$135 in the way of plaintiff's board, and afterwards he (de-
fendant) sued her for $90, balance of the rent; that plaintiff

occupied one room of the house for twelve months, and when he went to leave brought defendant the key to his room, and told him there was the key to the room, and left it with witness; that plaintiff never exercised any control, or made any demand for possession of said premises, or deed to said lot; that plaintiff is still indebted to witness (defendant) in a large amount, by way of account, which is mentioned in defendant's pleadings; that plaintiff never advanced to him any money, except $60, which plaintiff deposited with defendant, and which he afterwards returned to plaintiff on demand; that plaintiff never paid him for said lot."

It was agreed by counsel that the houses have been renting for from $30 to $75 per month, and have been unoccupied, or not rented at all, part of the time.

L. J. Wright, for defendant, testified that he remembered that he drew up some kind of an agreement between defendant and Mrs. Terrell about the houses; that Mrs. Terrell and plaintiff had had a difficulty, and that plaintiff had turned his business over to defendant, and that the defendant brought suit in his own name against Mrs. Terrell for balance on rent of the house."

This was all the testimony introduced by the parties.

The charge of the court is sufficiently indicated in the opinion.

The jury returned a verdict for plaintiff, and for $480 rent. Decree was entered for the lot and for the rent.

Motion for new trial was urged, because the verdict was not supported by the law and evidence, and was excessive; also, for want of the testimony of Grinstream, showing reasons why he was not subpœnaed as a witness, and his materiality.

The plaintiff remitted $350, and the motion for new trial was overruled.

The case is on writ of error by Edwards.

*W. H. Herndon*, for plaintiff in error, cited and discussed

Ann Berta Lodge v. Leverton, 42 Tex., 23; Taylor v. Ashley, 15 Tex., 54; Bracken v. Hambrick, 25 Tex., 412; 2 Wharton on Ev., secs. 909, 910; Story's Eq., sec. 761; Neatherly v. Ripley, 21 Tex., 435; Patton v. Rucker, 29 Tex., 411.

*J. J. Hill,* for defendant in error.

I. Continuance. (Johnson v. Brown, 25 Tex. Supp., 126; Baker v. Kellogg, 16 Tex., 118; Campion v. Angier, 16 Tex., 93; Harrison v. Cotton, 25 Tex., 53.)

II. General demurrer. (1 Chit. Pl., 661; Gould Pl., 467; 1 Tex., 367; 2 Tex., 485; 5 Tex., 276, 582; 7 Tex., 517.)

III. Charge erroneous. (Howard v. Colquhoun, 28 Tex., 143; Johnson v. Alexander, 14 Tex., 386; Earle v. Thomas, 14 Tex., 593; Hollingsworth v. Houlshousen, 17 Tex., 47; Elliot v. Mitchell, 28 Tex., 112; Seawell v. Lowery, 16 Tex., 50.)

IV. Verdict against evidence. (Briscoe v. Bronaugh, 1 Tex., 340; Wells v. Barnett, 7 Tex., 587; Ables v. Donley, 8 Tex., 336; Latham v. Selkirk, 11 Tex., 321; Gibson v. Hill, 23 Tex., 83; Stroud v. Springfield, 28 Tex., 676; 3 Gra. & Wat. on New Trials, 1213, 1239; Green v. Hill, 4 Tex., 465; Long v. Steiger, 8 Tex., 462; Baldridge v. Gordon, 24 Tex., 288; Powell v. Haley, 28 Tex., 56; Swinney v. Booth, 28 Tex., 115.)

V. Statute of frauds. The charge. (Farquhar v. Dallas, 20 Tex., 200; Thompson v. Payne, 21 Tex., 625; Linn v. Wright, 18 Tex., 317; Fowler v. Waller, 25 Tex., 701; Robinson v. Varnell, 16 Tex., 387; Cole v. Cole, 17 Tex., 6; Armstrong v. Toler, 11 Wheat., 276; Lee v. Hamilton, 12 Tex., 419; Earle v. Thomas, 14 Tex., 593.)

VI. No plea on point. The charge. (Tinsley v. Carey, 26 Tex., 350; Oliver v. Chapman, 15 Tex., 406.)

VII. Statute of frauds. Agency. The charge. (Bracken v. Hambrick, 25 Tex., 408; Garner v. Stubblefield, 5 Tex., 552; Dugan v. Colville, 8 Tex., 126; Ottenhouse v. Burleson, 11 Tex., 87; Taylor v. Ashley, 15 Tex., 50; Cottrell v. Teagarden, 25 Tex., 99.)

VIII. Negligence of counsel. (Freeman on Judgments, 112, sec. 500 ; Gra. & Wat. on New Trials, 1520–22; Payne *v.* Arnim, 29 Tex., 53; Hagerty *v.* Scott, 10 Tex., 525.)

MOORE, ASSOCIATE JUSTICE.—It is an elementary rule, that courts of equity will not enforce specific performance of a contract, unless its terms have been definitely understood and agreed upon by the parties, and clearly established by the evidence; and especially so, where the court is asked to decree specific performance of a parol contract for the sale of land, upon the ground of part performance. Neither must there have been an unreasonable delay in appealing to the court for its aid. If there has been laches, or a manifestation of indifference on the part of the plaintiff as to the performance or enforcement of the contract, and particularly if there has been a greater material change in the condition or value of the property, or if circumstances have occurred tending to obscure the true character of the transaction, and to obliterate the evidence establishing or explaining it, such laches or delay must be satisfactorily explained, or the court will not decree its performance, but leave the party to seek his redress by an action at law.

Obviously, the petition of the plaintiff in this case is subject to criticism. We do not feel warranted, however, in saying that it was so defective as to have required the court below to sustain appellant's general demurrer; or in our holding that the judgment should be reversed solely for its failure to do so, if in other respects it was unexceptional. But such is not the case. The evidence is even more unsatisfactory than the petition. It consists entirely of the unsupported testimony of the plaintiff. It is vague and indefinite in several important particulars, and in some respects variant from the averments of the petition. There seems to have been no effort, by either party, to develop the facts and circumstances of the alleged contract and its supposed performance, as we must infer, from the nature of the transaction, might easily have been

done. ' Both parties seem to have supposed their confused and flatly-contradictory statement would suffice for the proper disposal of the case. The testimony of appellant is as unsatisfactory as that of appellee; but he occupied the vantage-ground of a defendant in possession of the property under written evidence of title, while the plaintiff relies merely upon his own oath to establish a parol contract concerning land, and such part performance of it as, notwithstanding the statute of fraud, would authorize a court of equity to decree the title. Evidently, such a case is not to be determined, even by a jury, by the weight of oath against oath, when, so far as can be seen in the record, there is nothing to justify giving credit to one party or discredit to the other, or to turn the scale as between them. Aside from the fact that the plaintiff was contradicted by the defendant, if the unsupported oath of the plaintiff to a parol contract for the sale of land warrants a decree of title, the act to prevent frauds and fraudulent conveyances is of little effect in accomplishing the end for which it was intended. We do not understand that this court has given any intimation which tends to warrant such a conclusion. (See Moreland *v.* Barnhart, 44 Tex., 283, and cases there cited, for rule in respect to parol evidence, to show that a deed absolute on its face was intended as a trust.)

Nor is the charge of the court more satisfactory than the petition or evidence. It fails to present to the jury a full and satisfactory view of the issues involved in the controversy, and the principles and the rules of law by which they should be determined. But if these were the only objections to the charge, as appellant failed to ask for any additional instruction, he would have no right to complain. The charge, however, is not only defective in regard to matters of omission, but is likewise erroneous as to those of commission. It predicated the determination of one of the most important issues in the case upon a hypothesis not presented by the pleadings or authorized by the evidence, but directly in conflict with the plaintiff's theory of his right to a recovery, and well cal-

culated to mislead the jury, and induce them to suppose that the plaintiff was entitled to a verdict on a state of facts which gives not the slightest color to such a conclusion. The jury were, in effect, told that if the defendant had no just account against the plaintiff, or if he had not credited plaintiff with "the value of the work and labor, and other claims held by the plaintiff against defendant," they would conclude that the purchase-money for the lot in controversy had been paid. The only "work and labor" by the plaintiff, of which mention is made in the testimony, was done in improving the lot for which he is suing. Unquestionably, the court did not intend that the plaintiff, by his work and labor on this lot, paid the defendant for it. But in view of the facts of this case, if they are properly presented by the transcript, this charge was evidently calculated to mislead and confuse the jury.

The judgment is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.