## SNOVER v. JONES. (No. 386.)

(Court of Civil Appeals of Texas. El Paso. Jan. 21, 1915. Rehearing Denied Feb. 11, 1915.)

1. FRAUDS, STATUTE OF (§ 158*)—PAROL CONTRACT FOR SALE OF LAND—PART PERFORMANCE—EVIDENCE.

To take a parol agreement for the sale of land out of the statute of frauds by part performance, its terms and conditions must be clearly established by full and satisfactory evidence.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 373–376; Dec. Dig. § 158.*]

2. FRAUDS, STATUTE OF (§ 56*)—SALE OF LAND—DISTINGUISHED FROM INTEREST IN PROFITS.

A parol contract that defendant should live on land of plaintiff, build a house, pay taxes, and that after the land had become valuable through the natural growth of the neighboring city of El Paso it should be sold, and the profits divided between the parties, was insufficient to give defendant an interest in the land itself.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 83–89, 136–138; Dec. Dig. § 56.*]

Appeal from District Court, El Paso County; A. M. Walthall, Judge.

Trespass to try title by Jacob Snover against Paul Jones. Judgment for defendant, and plaintiff appeals. Reversed, and judgment rendered for Snover.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

J. F. Woodson and O. R. Armstrong, both of El Paso, for appellant. Wallace & Gardner, of El Paso, for appellee.

HIGGINS, J. Snover sued Jones in trespass to try title to recover two lots in city of El Paso. Defendant claimed title to an undivided one-half interest in the premises by virtue of a parol purchase, payment of consideration, entry into possession, accompanied by erection of valuable and permanent improvements thereon. The nature of his plea is indicated by the special issues submitted to the jury, as follows:

"(1) Did the plaintiff and the defendant, on or about the years 1899 or 1900, enter into an agreement by the terms of which plaintiff promised defendant to convey to him a one-half interest in the said two lots in consideration that the defendant would enter upon and improve said lots, and pay all taxes due or to become due thereon until such period of time had elapsed as would cause a substantial increase in the value of said lots by reason of the natural growth of the city of El Paso, or until such time as plaintiff and defendant should elect to divide said property?

"(2) Did the defendant enter upon said two lots and make permanent and valuable improvements thereon, and pay all the taxes then due, and that have since become due on said lots to the time of filing this suit, and did he do so under and by reason of said agreement?

"(3) Have the said two lots substantially increased in value by reason of the natural growth of the city of El Paso?"

Each of the issues were answered in the affirmative, and judgment was rendered thereon in Jones' favor for the one-half interest claimed by him. The sufficiency of the evidence is questioned.

It appears that in 1899 or 1900 Snover purchased the lots in controversy, and Jones and wife went into possession thereof and built a small, cheap, two-room house thereon, in which they have since lived, paying all taxes due on the premises. The contract under which they did this is disclosed by their testimony, which we quote:

Jones testified:

"Q. What was the language used by him [appellant], as near as you remember, in reference to same? A. He told me to go over there, live there, build a house, keep the taxes paid up on it; when it got to be worth enough, we would sell it and divide up the profits. I went down and kept all taxes paid up on it myself. Q. Kept all the taxes paid? A. Yes, sir. Q. What part were you to have of the land? A. From that I imagined to be divided in halves. Q. Was that the contract? A. Yes, sir."

And appellee further testified that he paid the taxes on the property because it was agreed that he should do so, which testimony was followed by the following:

"Q. For what purpose? What made you pay those? A. For my part of the place. Q. So you could get your one-half interest in the place? A. Yes, sir."

Mrs. Jones testified:

"Mr. Snover agreed with us when we moved on the place to pay all taxes and keep them all paid up, and, when they sold, each one take their share of the money and then divide the profits. We had been in there more than a year when Mr. Snover made that agreement; maybe not a year; we never had a word about it only at that time. Prior to the time this property was bought, I never had any conversation with my sister about getting a home; only that one time Mr. Snover asked me was I homesick. I said, 'I have no home to be sick about,' and he said, 'Never mind, Molly; I will buy you a home.' That was before he bought us a home. He and my husband were sitting right on the porch talking about it a number of times; they never said a word about it before the property was bought or before we built the house, so far as I know of. After we moved in we did have a conversation only in the way I have stated; only in a general conversation. * * * Mr. Snover never claimed to be the sole owner of that property, only in this way: He said that whenever the property was sold we would divide it and take out our share, and then divide the profits; he said we would take out what we put in on the place in improvements and taxes; that is what I always thought he meant, and take out our share, and then his share, and then divide the profits. * * * I heard the agreement that my husband testified about that Mr. Snover was to let us occupy the property. He did not say that we were to go into possession of the property, pay the taxes, put up this house or any kind of a house we wanted to, and, when the property was sold, we would get half of the profits, but he did say we were to get the amount we paid out in taxes and improvements, and then divide the profits. I do not think there was anything said about the kind of a house we were to put up."

[1] In order to remove a parol contract for the sale of land from the operation of the statute of frauds, its terms and conditions must be clear and free from all ambiguity and doubt, and it must be established by full, clear, and satisfactory evidence. Murphy v. Stell, 43 Tex. 123; Edwards v. Norton, 48 Tex. 291; Bracken v. Hambrick, 25 Tex. 408.

[2] The contract testified to by Jones and wife was insufficient to vest any interest in the land itself. 20 Cyc. 232, 237. At best, it was but a mere agreement to share the profits arising from the sale of the land after it had been held until it could be sold at a profit. It is wholly insufficient to sustain a judgment for an interest in the land itself.

Reversed, and judgment here rendered in favor of Snover for the land sued for.

WALTHALL, J., did not sit in this case.