J. C. FRANCIS v. W. M. THOMAS ET AL.

No. 6874. Decided June 9, 1937.
(106 S. W., 2d Series, 257.)

580

*Wynne & Wynne,* of Wills Point, for plaintiff in error.

All the terms of a contract need not appear in the memorandum in order to take the contract out from under the Statute of Frauds. Morrison v. Dailey, 6 S. W. 426; Mondragon v. Mondragon, 239 S. W. 650; Leverett v. Leverett, 59 S. W. (2d) 252.

*Geo. L. Huffman* and *P. O. Beard,* both of Marshall, *W. H. Sanford* and *Conan Cantwell,* both of Dallas, *T. B. Stinchcomb* and *Edward A. Brown,* both of Longview, and *Black & Graves,* of Austin, for defendant in error.

For one to be entitled to specific performance of an oral contract for the sale of real estate, or interest therein, such contract must be definite, certain and unambiguous in its essential and material provisions, and the existence and terms thereof and other facts essential to a recovery must be established by clear and convincing proof. Snover v. Jones, 172 S. W. 1122; 58 C. J. 930, 933, 1195, 1198; 20 Tex. Jur. 351.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

In the trial court plaintiff in error Dr. J. C. Francis was the plaintiff and defendants in error W. M. Thomas, B. F. Findley and G. C. Finch, sometimes called Grover Finch, were defendants. For convenience they will be designated here as in the trial court. Plaintiff brought this suit against defendants to enforce specific performance of certain contracts claimed to have been made by him with them by the terms of which they agreed to convey to him certain mineral interests in a 50 acre tract of land in Gregg County. In a trial before the court without a jury judgment was rendered in his favor for the interests sued for. That judgment was reversed and the cause remanded by the Court of Civil Appeals. 76 S. W. (2d) 575. The alleged contract with Thomas and Findley rested wholly in parol. There was a memorandum executed by Finch which is relied upon as being sufficient to take his contract out of the Statute of Frauds.

1   The making of an accurate statement of the case is rendered difficult by the fact that there is confusion and uncertainty in plaintiff's own testimony as to the character of the oral agreements which were actually entered into between him and the other parties. This lack of clarity and certainty in the terms of the contract as testified to by him would of itself require a reversal of the judgment of the trial court and an affirmance of the judgment of the Court of Civil Appeals. Courts of equity will not decree the specific performance of a contract, particularly of a parol contract for the sale of land, upon the ground of part performance, where there is confusion and indefiniteness as to the terms of the agreement. Edwards v. Norton, 48 Texas 291; Bracken v. Hambrick, 25 Texas 408; Snover v. Jones, 172 S. W. 1122.

The difficulty of stating the case is further increased by the lack of correspondence between the allegations, proof and findings. There appears to be a fatal variance, not only between the pleadings and the evidence, but also between the pleadings and the findings of the trial court upon which judgment was based with respect to the material terms and provisions of the alleged oral contract. We shall not set out the pleadings and evidence which reveal this variance and the uncertainties as to the terms of the agreement, because the decision of the Court of Civil Appeals was not placed on these grounds, and we are well convinced that the grounds upon which it was placed afford all the support required to sustain it.

This statement is thought to be sufficient to make understandable our views on the controlling questions of law presented for decision: According to the findings of fact by the trial judge Thomas and Findley, who owned a 50 acre tract of land in Gregg County, executed a mineral lease thereon to M. F. Beeler and plaintiff in January, 1931, the lease being taken in the name of Beeler. Thereafter Beeler transferred the lease to plaintiff in so far as it covered the South 16 2/3 acres of the tract. Beeler retained the lease on the North 33 1/3 acres, but he and plaintiff continued to handle their leases together. Later, Beeler and plaintiff sold defendant Finch 1/2 of the royalty owned by Thomas and Findley, and in the transaction Finch became indebted to plaintiff in the sum of $125.00. The trial court found that the following contract was thereafter made between plaintiff and the defendants:

"J. C. Francis went to the defendants, Grover Finch, W. M. Thomas and B. F. Findley, and contracted with them that he would sell his oil, gas and mineral lease upon the south 16 2/3 acres of the 50 acre tract of land involved in this controversy at $65.00 an acre provided he could get some royalty interest from them.

"The court finds that the said J. C. Francis contracted and agreed with the defendants W. M. Thomas, Grover Finch and B. F. Findley that he would sell his lease to an independent operator at $85.00 less per acre than he could get from a major company, and that he would release his claim of $125.00 against the said G. C. Finch; and the defendant, Grover Finch, agreed that he would give to the said J. C. Francis 1/64 of the oil, gas and minerals produced, known as royalty interest, or one-eighth of the one-eighth royalty which he had purchased from B. F. Findley and W. M. Thomas, covering the 50 acre tract of land involved in this controversy, while B. F. Findley and W. M. Thomas contracted and agreed to deliver, and traded to the said J. C. Francis, an undivided 1/64 of all the oil, gas and minerals in and under and that might be produced from the south 16 2/3 acres out of the 50 acre tract of land subject to the terms of the lease, being one-eighth of the one-eighth royalty. Each party agreed to transfer to the plaintiff, J. C. Francis, one-eighth of the one-eighth royalty payable under the lease from B. F. Findley and W. M. Thomas to M. F. Beeler, as above set out. W. M. Thomas and B. F. Findley were to jointly deliver 1/64 of such minerals in the south 16 2/3 acres, and Grover Finch was to deliver one-eighth of the one-eighth royalty, or 1/64 royalty interest in the entire 50 acre tract.

"After the said Grover Finch made this agreement with J. C.

Francis and the memorandum dated 2/25/31 had been delivered, J. C. Francis made a similar agreement with W. M. Thomas and B. F. Findley and sold his lease to Taylor Fithen, whose option had expired, relying on his contract with defendants. Fithen in turn had contracted to sell to one Ross the south 6 2/3 acres. This sale was made at the price of $65.00 per acre and a 1/16th working interest, which interest was of nominal value at such time."

The trial court then found that plaintiff performed the obligations of his contract and that defendants failed and refused to execute the conveyances to him. A further finding was:

"Later, litigation having been filed, the completion of the well was delayed, and after the litigation had been appealed to the Court of Civil Appeals at Texarkana, Texas, the court finds that J. C. Francis met with W. M. Thomas and Grover Finch and contracted with each of them that he would sell his working interest of 1/16 to a Greek by the name of Kitzos, but that he didn't care to sell his interest unless they were going to perform their contract and agreement which they had made with him to transfer to him the one-eighth royalty interest. The said W. M. Thomas and Grover Finch each further contracted and agreed with the said J. C. Francis that if he would sell his remaining interest in order to get the lawsuit settled, they were ready and willing to carry out the contract and would deed to him the royalty interest which they had contracted to deliver, subject to the terms of the outstanding lease. Relying upon this agreement, the court finds that the said J. C. Francis parted with title to his remaining interest in the 16 2/3 acre leasehold."

As noted above, in connection with the contract between plaintiff and Finch the latter executed a written memorandum, and one of the principal questions presented for decision is whether that memorandum was sufficient to satisfy the requirements of the Statute of Frauds, Article 3995. The memorandum was in words as follows:

" 'Dr. Francis is to get 1/64 royalty interest in 50 acres in C. H. Alexander Survey, Gregg County provided drilling contract is obtained within 30 days. 2/25/31 G. C. Finch.' "

The Court of Civil Appeals disposed of the question in this language:

" * * * The memorandum set out in the pleadings of appellee and signed by the appellant G. C. Finch is insufficient to take the contract alleged out of the Statute of Frauds for the reason that it failed to sufficiently describe the land in-

volved. Starkey v. Texas Farm Mortgage Co., (Tex. Civ. App.) 45 S. W. (2d) 999."

2 We agree with this conclusion. The description merely mentions an unidentified portion of a larger tract of land without referring to any means of identification, and it is the settled law of this State that such description is insufficient to support an action for specific performance. This Court, speaking through Justice SHARP, in the case of Smith v. Sorelle, 126 Texas 353, 87 S. W. (2d) 703, held that a deed was void for uncertainty which contained a similar description. For greater reason such description in a contract to convey will not support an action for specific performance. The description condemned in the Smith-Sorelle case was as follows:

"Being an undivided one-fourth interest out of a certain tract of land situated, lying, and being in the County of Upshur, State of Texas, described as follows: 100 acres out of Blocks 8 and 9 of the subdivision of Jose Maria Pineda Survey, which was patented to Adolphus Stern, Pat. 608, Vol. 2, three miles North of Gladewater, Texas."

In the Starkey case, supra (error refused), cited in the opinion of the Court of Civil Appeals, the memorandum described the land as "60 acres of land out of the Cyrus Sullivant Survey, in Hill County, Texas." That description was condemned as being insufficient to support the action. Substantially identical contracts have been condemned in many cases, among which may be cited the following: Osborn v. Moore, 112 Texas 361, 247 S. W. 498; Rosen v. Phelps, 160 S. W. 104 (error refused); Penn v. Texas Yellow Pine Lumber Co., 35 Texas Civ. App. 181, 79 S. W. 842 (error refused); Kellner v. Ramdohr, 207 S. W. 169. These authorities so certainly condemn the description contained in the memorandum relied on in this case as being insufficient under the Statute of Frauds that a further discussion thereof is not deemed needful.

3 This brings us to a consideration of the question of whether, under the facts of this case the Court should break through the statute and specifically enforce these oral contracts.

The Court of Civil Appeals concluded:

" * * * In the first place, acts of performance on appellee's part relied upon as sufficient to take the parol contract out of the Statute of Frauds are not such acts as could have been done with no other view or design than to fulfill the particular agreement here sought to be enforced. And where acts of perform-

ance on the part of one of the parties to a contract are relied upon to authorize the enforcement of the same, they must meet the above requirement. 20 Tex. Jur., Sec. 115."

We agree with this conclusion. There is nothing in the nature of these acts which suggests the existence of a contract. The sale of oil leases to one party does not suggest the existence of a prior oral contract with another party to convey royalty interest in consideration therefor. Every act of plaintiff may be explained quite separate and apart from any alleged oral contract and no act is "unequivocally referable" thereto. These acts do not tend to prove the existence of the parol agreement relied upon by plaintiff. Clegg v. Brannan, 111 Texas 367, 234 S. W. 1076; Lechenger v. Merchants National Bank, 96 S. W. 638 (error refused) ; Burns v. McCormick, 233 N. Y. 230, 135 N. E. 273. From this last authority we quote:

" * * * There must be performance 'unequivocally referable' to the agreement, performance which alone and without the aid of words of promise is unintelligible or at least extraordinary unless as an incident of ownership, assured, if not existing.

" 'An act which admits of explanation without reference to the alleged oral contract or a contract of the same general nature and purpose is not, in general, admitted to constitute a part performance.' Woolley v. Stewart, 222 N. Y. 347, 351, 118 N. E. 847, 848.

"What is done must itself supply the key to what is promised. It is not enough that what is promised may give significance to what is done. * * *."

4 We are in agreement with this further conclusion of the Court of Civil Appeals:

" * * * But there is another reason why this contention of appellee can not be sustained, and that is that the acts of performance on his part amount to nothing more than the payment of the consideration agreed upon for the conveyance to him of the royalty interest, and for the recovery of which he has his remedy at law and can not resort to the equitable remedy of specific performance. Clegg v. Brannan, 111 Texas 367, 234 S. W. 1076; Id., (Tex. Civ. App.) 190 S. W. 812."

That conclusion is supported, not alone by the case relied upon, but by many other authorities, among which may be cited the following: Ann Berta Lodge v. Leverton, 42 Texas 18; Hooks v. Bridgewater, 111 Texas 122, 229 S. W. 1114; Bradley v. Owsley, 74 Texas 69, 11 S. W. 1052; Kistler v. Lathan, (Com. App.) 255 S. W. 983; Texas & Pacific Coal & Oil Co. v.

Hamil, (error refused) 238 S. W. 672; Lechenger v. Merchants National Bank, supra; Paschall v. Anderson, (Com. App.) 91 S. W. (2d) 1050; Upson v. Fitzgerald, 129 Texas 211, 103 S. W. (2d) 147; Texas Co. v. Burkett, 117 Texas 16, 296 S. W. 273, 54 A. L. R. 1397, does not announce a different rule.

5    Plaintiff owned a mineral lease on 16 2/3 acres of land. According to his own testimony he could not develop it and had determined to sell it. A so-called major oil company would pay him $2500.00 for it and a so-called independent producer would pay him $1000.00 for it. He represented these facts to the defendants. It was thought to be to the best interests of the defendants to have the lease passed to and be operated by an independent producer. Plaintiff therefore agreed to sell to the independent producer at the lesser price in consideration of the agreement by defendants to convey certain royalty interests to him. From that statement it would appear that plaintiff suffered a loss of $1500.00 in reliance upon his oral conract. But it is disclosed that in his sale to the independent producer plaintiff retained a 1/16 working interest in the lease, which he later sold for more than $1500.00. He therefore profited by his reliance upon the oral contract. By no authority to which we are referred is a court of equity justified in disregarding the plain terms of the Statute of Frauds and awarding specific performance of an oral contract to convey real estate where the plaintiff profited by his reliance upon the oral contract.

If the transaction with Kitzos, which is detailed in the findings above copied, be regarded as a separate contract, still plaintiff has established no such loss as would justify a court of equity in breaking through the statute and enforcing the oral agreement. There is no showing that plaintiff sold his interest for less than its full value. If in fact plaintiff suffered any loss, it is capable of accurate ascertainment, and the law affords him full protection. If nothing short of specific performance of such oral contracts will make a party whole and prevent the perpetration of a fraud courts of equity will grant that relief, but where, as here, an adequate legal remedy is afforded, and the enforcement of the statute will not perpetrate a fraud, equity will not interpose.

6    Defendants rely upon the case of Matthewson v. Fluhman, (Com. App.) 41 S. W. (2d) 204. We shall not undertake to harmonize all that is written in that opinion with the various opinions of this Court above cited. The opinion in that case was not adopted by the Supreme Court and to the extent that

it may conflict with the opinions of the Court herein cited it must yield to them as authority.

The judgment of the Court of Civil Appeals reversing the judgment of the trial court and remanding the cause is affirmed.

Opinion adopted by the Supreme Court June 9, 1937.