**ASCHER et al. v. BIRD et al.**

No. 6330.

Court of Civil Appeals of Texas. Texarkana.

Jan. 21, 1948.

Rehearing Denied Feb. 5, 1948.

Jones, Jones & Brian, of Marshall, Clifford S. Roe, of Carthage, and William Greene, of Shreveport, La., for appellants.

William J. Merrill and Sid B. Turner, both of Carthage, for appellees.

WILLIAMS, Justice.

H. C. McDaniel, the agreed common source of title, on August 8, 1919, executed and delivered an instrument in the form of a royalty deed, promptly recorded in the Panola County deed records, which purports to convey to Byron E. Reed a royalty interest in land, described in the deed as follows:

"One-half interest in and to all the oil, gas and other minerals in and under and that may be produced from the following described land situated in Panola County, Texas, to-wit:

"Being 95 acres of land, a part of the Thos. Powell Survey and being a part of the 320 acres deeded to me by Fannie McDaniel on the 14th day of January, 1899, and recorded in Vol. 4, pages 3 and 4, Deed Records of Panola County, Texas, together with the right of ingress and egress at all time for the purpose of mining, drilling and exploring said lands for oil, gas and other minerals, and removing the same therefrom."

A subsequent paragraph recited it was the same land that day leased to P. P. Long, subject to said lease and was to cover and include one-half of all the royalty and rentals due and to be paid under the terms of said lease; and that in the event said lease for any reason becomes cancelled or forfeited, the minerals shall be owned jointly by McDaniel and Reed, each owning one-half. This lease for a primary term of six years, which was promptly filed for record in Panola County deed records, described the land covered by the lease as follows:

"All that certain tract of land situated in the county of Panola, State of Texas, described as follows, to-wit:

"Being 95 acres of land, a part of the Thos. Powdrill Survey and being a part of the 320 acres deeded to me by Fannie McDaniel on the 14th day of January, 1899, and recorded in Vol. 4, pages 3 and 4, Record of Deeds, Panola County, Texas, and containing 95 acres, more or less."

The land referred to in above instruments as being "a part of the 320 acres deeded to me by Fannie McDaniel on the 14th day of January, 1899," is recorded in

Vol. 4, pages 3 and 4 of Deed Records of Panola County, as follows:

"All that certain tract of land situated in Panola County, Texas, on the east side of the Sabine River described as follows, to-wit:

Beginning at the N. W. Corner of a tract of land, that Thomas Powdrill sold to Jacob Coats;

Thence west on the north line of Samuel Buckner's survey at 507 varas, a stake;

Thence S. 5 E. at 2140 varas intersecting the South line of said Buckner's Survey, a stake;

Thence S. 62 East 600 varas said Coats S. E. corner;

Thence N. 5 W. with said Coats West line at 2350 varas, the beginning corner, containing 200 acres of land, more or less. The said land being a part of the Thos. Powdrill H. R. Survey.

Also a tract of land situated in Panola County, Texas, on the East side of Sabine River of the Thomas Powdrill Survey, containing 70 acres of land to be taken out of the Northeast corner of said Thomas Powdrill Survey."

The trial court found that the "95 acres" could not be located upon the ground from the description data contained in above royalty deed, or in above instruments of reference; the description data being so uncertain and insufficient as to preclude the location of the property conveyed and therefore void. Based upon this finding and a finding later herein discussed, the court decreed that the deed from McDaniel did not pass any interest to Reed or to his successors in title, the appellants Moses Ascher and others, the defendants and cross-plaintiffs below; and that all the mineral interests remained in H. C. Mc-Daniel, who had conveyed through mesne conveyances to appellees, Leo Bird and others, the plaintiffs and cross-defendants below.

Prior to the execution of the royalty deed, McDaniel through the years 1911 to 1918 had conveyed off several tracts in fee simple for a total of 225 acres of land. According to surveying testimony offered by appellants, the surveyor located the 200 acre tract on the ground from the descrip-tion contained in the Fannie-H. C. Mc-Daniel deed but was unable to locate the 70 acres called for in the same deed. It was this surveyor's testimony that the 225 theretofore conveyed off which he located on the ground included by adjoinder calls substantially, if not all, of the 70 acre tract and all of the 200 acres tract save and except 46.15 acres that he located by metes and bounds in the southwest corner of the 200 acre tract. Under their pleadings, in the trial and under their second point here, appellants contend that the McDaniel-Reed deed had the effect to convey one-half of 95 acres or an undivided 47.5 acre royalty interest in the 270 acres called for in the Fannie-H. C. McDaniel deed. Grounded upon this theory and under above survey-or's evidence appellants assert the court er-red in refusing under their cross-petition to decree title in them to the 8/8 minerals (the P. P. Long oil and gas lease having expired years prior to this trial) in the as-serted remaining 46.15 acres.

The theory here urged which was applied in Morris v. Short, Tex.Civ.App., 151 S.W. 633; Waterhouse v. Gallup, Tex. Civ.App., 178 S.W. 733; and Turner v. Hunt, 131 Tex. 492, 116 S.W.2d 688, 117 A.L.R. 1066, cited by appellants, are not applicable under this record. This royalty deed together with such extrinsic evidence as was admissible do not disclose an intent to convey an undivided 47.5 acre royalty interest in either the 320 or 270 acre body of land. The oil and gas lease referred to in the royalty deed specifies the land to be "all that certain tract; being 95 acres of land; a part of the 320 acre tract"; and closes with the description or limitation clause, "containing 95 acres, more or less." Such description data imports the intent to lease a certain tract in severalty, name-ly, a certain 95 acre tract, more or less. This conclusion finds support in the further fact that a purported fee owner of the 8/8 minerals in a tract of land would not logi-cally lease, and a lessee knowingly accept an oil and gas lease which covered only an undivided interest in such a tract. If the correction lease, later herein discussed, ex-ecuted by McDaniel in 1920 in lieu of the original lease was admissible on the ques-tion of intent, namely, whether the royalty

deed was intended to convey minerals under a tract in severalty or a 47.5 acre undivided interest in the 270 or 320 acre tract, the description data in this substitute lease would settle the question. This correction lease describes a 95 acre tract by metes and bounds. To give effect to appellants' contention that the royalty deed should be construed as a conveyance of an undivided 47.5 acre royalty interest in a 270 acre tract would require a court to arbitrarily strike and eliminate from the royalty deed "one-half interest * * * in and under * * * the following described land * * * to-wit: Being 95 acres, a part of the * * * survey, and being a part of the 320 acres." It would be necessary to breathe into the body of the deed language so as to read, "an undivided 47.5 acre royalty interest" in that tract deeded to him by Fannie McDaniel. The record does not disclose such intent.

The McDaniel-Reed deed makes no attempt to describe the mentioned 95 acre tract and is without a key or reference data by which it can be identified or located in a larger tract; and being so tainted, the deed is invalid as a conveyance in severalty and parol or extrinsic evidence is inadmissible to supply such want of description of the land. Smith v. Sorelle, 126 Tex. 353, 87 S.W.2d 703; Brown v. Gaines, Tex.Civ. App., 131 S.W.2d 801; Francis v. Thomas, 129 Tex. 579, 106 S.W.2d 257 and authorities collated page 260; Kellner et al. v. Ramdohr, Tex.Civ.App., 207 S.W. 169, 170.

■ Under an alternative plea grounded on allegations of a mutual mistake appellants sought a reformation and correction of the description data in the royalty deed so as to have it read similar to the field notes description of the 95 acres tract contained in the correction lease which McDaniel executed in 1920 to the Gulf Production Company, assignee of the Long lease. According to the surveyor's testimony, this correction lease did not describe 95 acres then owned by McDaniel, either in 1919 or 1920. The field notes may have included 46.15 acres then owned by McDaniel out of the 200 acre tract, but it also included 3.17 acres out of a 150 acre tract to the east then owned by McDaniel and included 45 acres which was not owned by McDaniel. If, as is evident above, this correction lease did not reflect the intent of the parties thereto, it does not afford a basis for the reformation of the royalty deed as prayed for.

■ This record is absent evidence to support the claim of mutual mistake other than what the royalty deed, the original oil lease and the substitute lease may disclose, and supports the trial court's finding that no legal evidence introduced would show a mutual mistake in the preparation or execution of the royalty deed as urged by appellants.

"On the party who seeks reformation rests the burden of proving the alleged mistake, and that it was mutual between the original parties to the instrument; also of proving the true terms of the agreement and the facts which entitle the pleader to reformation." 36 Tex.Jur. p. 779; Davis v. Davis, 141 Tex. 613, 175 S.W.2d 226.

The judgment of the trial court is affirmed.