## DUKE v. JOSEPH.
### No. 9733.

Court of Civil Appeals of Texas. Austin.
July 14, 1948.
Rehearing Denied Sept. 11, 1948.

Critz, Kuykendall, Bauknight & Stevenson, Richard Critz and Dan Moody, all of Austin, for appellant.

536

Looney & Clark and R. Dean Moorhead, all of Austin, for appellee.

McCLENDON, Chief Justice.

Suit by Duke (Col. James E. Duke, Jr.) against Joseph (Edward Joseph) to recover $42,000 damages for breach by Joseph of an alleged verbal contract to assign to Kuhlman for Duke's benefit a written lease for a longer period than one year upon real estate in Austin known as the Motoramp Garage. The trial court dismissed the suit upon Duke's refusal to amend, after susterition of an exception to Duke's pleadings to the effect that the alleged contract being verbal was violative of art. 3995, sub. 4 (Statute of Frauds), prohibiting bringing of any action "upon any contract for the sale of real estate or the lease thereof for a longer term than one year." Duke has appealed.

Two grounds for reversal are urged by Duke:

1. The contract being for the assignment, and not for the execution, of a lease is not covered by art. 3995, sub. 4, but is covered by art. 1288 (not invoked by Joseph) requiring a conveyance of any estate in land for a longer term than one year to be in writing.

2. Joseph is estopped to plead the statute of frauds because Duke (so his pleadings allege), relying upon the contract, and with the knowledge of Joseph, voluntarily retired as active full Colonel in the U. S. Army, thus reducing his salary from $965 to $390 per month.

■ The first contention is manifestly without merit. If the meaning of the two provisions be limited to the precise sense of their wording, art. 1288 applies only to conveyances, that is to executed transactions or attempts to pass title, whereas art. 3995, sub. 4, applies only to contracts to convey title (or lease). A contract to assign a lease for a term longer than one year is a "contract for the sale of real estate," regardless of whether it is a contract "for * * * the lease thereof." It is unimportant here to consider whether the contract pleaded falls within the prohibitions of both of these Articles. This holding is of such elementary nature as to require no citation of sustaining authority.

Further, in this connection, Duke's brief states: "It is no answer for appellee to say that the judgment herein is correct because appellant's petitions were subject to the special exception that was violated under Article 1288 of our civil statute. No such exception was urged by appellee or passed on by the trial court, and this court cannot say that had such exception been urged and sustained appellant would not have amended his petition so as to meet the same."

■ In what possible way could his pleadings be amended so as to avoid the provisions of one of these Articles without violating those of the other? The brief suggests none; nor can we conceive of any. It is conceded that the contract is one required to be in writing, if not under art. 3995, subd. 4, then under art. 1288. The quoted suggestion says in effect: True, the contract pleaded is required to be in writing, but under art. 1288 which was not pleaded and not under art. 3995, sub. 4, which was pleaded; therefore the cause should be remanded to the trial court where Joseph would be allowed to plead art. 1288, and Duke would be allowed to amend and plead some defense which would have been equally applicable as a defense under art. 3995, sub. 4, but which Duke did not plead before. · We are not willing to subscribe to a rule which would sanction such procedure. We mention the point, although it is not important here, since it is urged with seeming confidence by eminent counsel. ·

It is not necessary to set out the pleadings under the second ground of error with more particularity than above. The asserted legal principle upon which this ground is rested is thus stated in the brief: "Our courts have repeatedly held that where one party to an oral contract, in reliance thereon, is induced or permitted to place himself in a wrong position so as to constitute a fraud, the courts will then say that the statute of frauds is not applicable."

Supporting authorities listed in the order cited are: Morris v. Gaines, 82 Tex. 255, 17 S.W. 538; Ward v. Etier, Com.App., 113 Tex. 83, 251 S.W. 1028; Texas Co. v. Burkett, 117 Tex. 16, 296 S.W. 273, 54 A.L.R. 1397;. Upson v. Fitzgerald, 129

Tex. 211, 103 S.W.2d 147; Francis v. Thomas, 129 Tex. 579, 106 S.W.2d 257; American Nat. Ins. Co. v. Warnock, 131 Tex. 457, 114 S.W.2d 1161; Burgin v. Godwin, Tex.Civ.App., 167 S.W.2d 614, error ref. W.M; 49 Am.Jur., p. 737, Sec. 430; 37 C.J.S., Frauds, Statute of, § 250, page 759; Annotations, 101 A.L.R., p. 962, et seq.

We do not question the soundness of this asserted principle as applied to the factual situations in which it was employed in the cited cases. In its broad implications in the abstract, without limitation or qualification, in which Duke seeks to apply it, and especially as applied to the factual situation he alleges, we confidently assert that it is not now and has never been the law of this State. We shall discuss its application to the cited cases later.

 The legal principles applicable here, which have been consistently followed in this State, are set forth in Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 15 A.L.R. 216, and recently thus restated in Matney v. Odom, Tex.Sup., 210 S.W.2d 980, 984, Mr. Justice Taylor writing: "It is the law of this state that to remove a case (contract for the sale of land) from the operation of the statute of frauds, three things are necessary: Payment of the consideration, possession by the vendee, and the making by the vendee of valuable improvements on the faith of the contract, or, in the absence of such improvements, such other facts as would make the transaction a fraud if it were not enforced."

Duke's brief quotes in full Sec. 430 of 49 Am.Jur., pp. 737-8, upon the subject "Acts in Reliance on, Rather than in Execution of, Contract," wherein is criticized the holding of some courts to the effect that acts authorizing equitable relief must be in performance of the contract and not merely in reliance thereon; stating: "Many of the strongest cases, and those most frequently arising for the interposition of equity under the doctrine in question, do not involve any part performance at all properly speaking." This is no doubt correct. Valuable improvements do not ordinarily come within the category of part performance, but merely within that of reliance upon the contract. The same text points out that the acts relied upon "must be consistent with the contract pleaded and proved, and inconsistent with any other reasonable theory than that the acts were pursuant to such contract." Id. Sec. 428, p. 735. Also, "Concisely stated, what is done must itself supply the key to what is promised. It is not enough that what is promised gives significance to what is done." Id. Sec. 429, p. 736. In other words, the acts relied upon must be of such a character as to afford corroboration of the existence of the asserted contract.

The following from the very recent case of Chevalier v. Lane's Inc., Tex.Sup., 213 S.W.2d 530, is peculiarly apt here:

"The legislature naturally contemplated that such a statute would impose hardship on those who might contract in ignorance of its terms. But the Statute unmistakably declares a policy that parol testimony is too unreliable for proof of certain types of agreement, and courts must give heed to that policy as well as to considerations of an equitable character. They have done so in cases arising under other sections of the Statute than that involved here—for example, the case of a parol sale of land, in which 'full performance,' in the sense of full payment of the consideration by the purchaser, is held not to make the contract enforceable unless accompanied by other circumstances, such as change of possession and erection of valuable improvements. These accompanying circumstances are important not merely as equities but also as ' * * * at least a corroborative fact that the contract was actually made.' Hooks v. Bridgewater, 111 Tex. 122, 129, 229 S.W. 1114, 1117, 15 A.L.R. 216. The same principle is expressed in somewhat different form in Francis v. Thomas, 129 Tex. 579, 106 S.W.2d 257, as follows:

" * * * There is nothing in the nature of these acts which suggests the existence of a contract. The sale of oil leases to one party does not suggest the existence of a prior oral contract with another party to convey royalty interest in consideration therefor. Every act of plaintiff may be explained quite separate and apart from any alleged oral contract and no act is "unequivocally referable" thereto. These

acts do not tend to prove the existence of the parol agreement relied upon by plaintiff. Clegg v. Brannan, 111 Tex. 367, 234 S.W. 1076; Lechenger v. Merchants' National Bank, Tex.Civ.App., 96 S.W. 638, error ref.; Burns v. McCormick, 233 N.Y. 230, 135 N.E. 273. From this last authority we quote:

"'There must be performance "unequivocally referable" to the agreement, performance which alone and without the aid of words of promise is unintelligible or at least extraordinary unless as an incident of ownership, assured, if not existing.

"'An act which admits of explanation without reference to the alleged oral contract of the same general nature and purpose is not, in general, admitted to constitute a part performance.' Woolley v. Stewart, 222 N.Y. 347, 351, 118 N.E. 847, 848.

"What is done must itself supply the key to what is promised. It is not enough that what is promised may give significance to what is done."

We do not find any case in this State which holds that acts of the vendee, not inherently related or corroborative of the existence of the contract, and standing alone have been held sufficient to take the case out of the statute of frauds.

A case practically on factual all fours with that at bar is Santoro v. Mack, 108 Conn. 683, 145 A. 273, 276, by the Supreme Court of Errors of Connecticut. The acts there relied upon in addition to a small payment on the purchase money, consisted in procuring services of an engineer and architect, and giving a mortgage on other property to procure a loan. In rejecting the sufficiency of these acts the court said:

"Under the rule well established by the authorities it must appear that these acts are of such a character that they can be reasonably and naturally accounted for in no other way than that they were performed in pursuance of a contract between the parties, and, though they cannot indicate all the terms of the agreement, they must be in conformity with its provisions. * * *

"The acts claimed by the plaintiff as above stated, were not, so far as appears, of this character. They do not compel the inference that there was some contract by which these acts were required of the plaintiff, and therefore explainable upon no other theory. We are not forced to the conclusion by anything which appears of record, that these acts were done in pursuance of the requirements imposed by a contract between the parties. *They are of a purely preliminary or collateral character, done by the plaintiff only in anticipation of the actual performance of a contract by both parties.* One of the most common acts of part performance, and one which illustrates the distinction to be drawn, is the act of giving possession of the property to the prospective purchaser." (Emphasis added.)

In only four of above cases cited by Duke was the oral contract upheld. Their distinguishing factual elements from those at bar will be briefly noted.

In Morris v. Gaines, supra, the oral contract to convey was sought to be enforced by the vendor. The facts are somewhat involved, but it is clear that the vendee had been put in possession by the vendor and had participated in an arrangement to clear the title through foreclosure suit.

Ward v. Etier, supra (an unadopted Commission opinion) involved an oral contract for lease of a garage then under lease to another tenant who owned valuable fixtures upon the property. Etier having been induced by Ward to purchase these fixtures, and relying upon the oral agreement to execute a two-year lease at a higher rental, went into possession with Ward's consent.

Texas Co. v. Burkett, supra [117 Tex. 16, 296 S.W. 279], involved an oral extension of a written lease of water rights with oral option of extension, the owner having lost the opportunity to make another lease through reliance upon the oral extension. The following analysis of the facts and holding is quoted from the opinion by the late Chief Justice Cureton: "In this case Burkett completely performed his contract, treating *the contract as being the written instrument in evidence, together with the oral option or privilege of extending it,* and as having been extended as found by the jury, by delivering the premises to the Texas Company and keeping faith with the

warranty at the close of his contract, which we have quoted, to the effect that Burkett warranted the company 'in the quiet and peaceable possession of the above-described premises for and during the term of this grant.' That grant extended definitely by the terms of the contract for one year from its date, and then under the terms of·the option for another year, if the option was exercised, and the jury found that it was exercised. After the delivery of possession of the premises, nothing more remained for Burkett to do. He had completed his part of the agreement, including the option." (Emphasis added.)

Burgin v. Godwin, supra, error ref. WM, is rested upon the confidential relation of attorney and client.

In each of the other three cited cases, Francis v. Thomas (see above quoted extract from Chevalier v. Lane's Inc.), Upson v. Fitzgerald, and American Nat. Ins. Co. v. Warnock, validity of the invoked parol agreement was denied. These cases support our holding.

The trial court's judgment is affirmed.