"MOORE" BURGER, INC., Petitioner,

v.

PHILLIPS PETROLEUM COMPANY
et al., Respondents.

No. B-3011.

Supreme Court of Texas.

Oct. 4, 1972.

Rehearing Denied Mar. 7, 1973.

Phillip W. Gilbert, Austin, for petitioner.

Stayton, Maloney, Black, Hearne & Babb, John W. Stayton, Coleman Gay, Austin, for respondents.

CALVERT, Chief Justice.

This suit is by "Moore" Burger, Inc. against C. Milton Dowd, Albert Craus and Phillips Petroleum Company for compensatory and exemplary damages for breach of a contract to lease two tracts of land to the plaintiff, or, alternatively, for specific performance of the contract. Each of the defendants filed general denials and pleaded the statute of frauds as an affirmative defense. Phillips also filed a cross action by which it sought to recover $3,666.67 from "Moore" Burger as rental on a part of the property. Each defendant moved for summary judgment that the plaintiff take nothing, and Phillips sought, in addition, summary judgment for the rentals for which it had sued. All three motions were granted and judgment was rendered that "Moore" Burger take nothing and that Phillips recover the sum of $3,500.00 from "Moore" Burger. The court of civil appeals affirmed. 470 S.W.2d 762.

The contract to lease on which "Moore" Burger's suit is predicated was in writing and was attached to its petition as an exhibit. It purports on its face to be a contract between William F. Kemp, Trustee (shown by summary judgment proof to be trustee for Dowd and Craus), as lessor, and "Moore" Burger, as lessee, and contains an agreement to lease First Tract, to be purchased from the City of Austin, for one year with automatic renewals for nine additional years, and to lease Second Tract, to be purchased from the Ing heirs, and on which lessors agreed to build a building, for a primary term of twenty years, with options for renewal for an additional ten years. It is signed by W. D. Scallon, Jr., President of "Moore" Burger, but it is not signed by Dowd or Craus or by anyone in their behalf.

None of the motions for summary judgment state the grounds or disclose the legal

theory on which judgment was sought and obtained. "Moore" Burger's own petition with its attached exhibit establishes the defendants' affirmative defenses of the statute of frauds as a matter of law. Although "Moore" Burger pleaded facts in great detail in the petition on which it went to trial, it did not at any point in its petition, or in summary judgment pleadings, disclose the legal theory on which it sought to avoid the statute of frauds defenses. In other words, the transcript of the proceedings in the trial court leave the issues tried and decided by the trial court in complete darkness.

█ In the presentation of its case in the court of civil appeals, "Moore" Burger contended that the summary judgment proofs supported two legal theories by which the bar of the statute of frauds was avoided, viz: (1) its right to the imposition of a constructive trust to enforce the agreement to build and to lease, and (2) such part performance on its part as is necessary to meet the requirements of the rule of Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114 (1921). The court of civil appeals rejected both theories. We agree with that court's conclusion that, on the basis of the summary judgment evidence, neither theory presents a sound basis for reversing the trial court's judgment.

"Moore" Burger asserts in this court that its pleading and the summary judgment evidence will avoid the statute of frauds defense of Dowd and Craus on the legal theory of promissory estoppel, thus entitling it to enforcement of its contract as to those respondents, and that the obligations of the contract are enforceable against Phillips as covenants running with the land or because Phillips purchased the property with actual or constructive notice of the terms of the contract.

█ The defendants insist that "Moore" Burger cannot raise the question of promissory estoppel because it was neither pleaded in the trial court nor presented in the court of civil appeals. We disagree. It is true that the plaintiff did not use the words "estoppel" or "promissory estoppel" in its trial pleadings, but it pleaded facts which, if true, would give rise to the legal concept, and, as with the issue of waiver in Womack v. Allstate Insurance Company, 156 Tex. 467, 296 S.W.2d 233 (1956), this court has jurisdiction to determine the applicability of the theory in an appeal from a summary judgment. Our question, then, is whether the summary judgments were authorized and proper when controlling rules of procedure and substantive law are applied in considering the summary judgment evidence.

█ Promissory estoppel is a defensive plea; it is a plea in confession and avoidance. We so held in Wheeler v. White, 398 S.W.2d 93, 96 (Tex.1965), when we said:

"This [promissory estoppel] does not create a contract where none existed before, but only prevents a party from insisting upon his strict legal rights when it would be unjust to allow him to enforce them. . . . The function of the doctrine of promissory estoppel is, under our view, defensive in that it estops a promisor from denying the enforceability of the promise."

The plea is being used in this case in an effort to avoid the statute of frauds defense which is established as a matter of law. A defendant who seeks a summary judgment on the theory that the plaintiff's suit is without merit has the burden of establishing as a matter of law that there is no genuine issue of fact as to at least one essential element of the plaintiff's cause of action. Gibbs v. General Motors Corporation, 450 S.W.2d 827 (Tex.1970). This, however, is not that type of case; here, the summary judgment evidence establishes the affirmative defense as a matter of law. In this situation we hold that the *Gibbs* rule did not impose the burden on the defendants to negative "Moore" Burger's defensive plea; rather, the burden was on

"Moore" Burger, if it wished to avoid the granting of summary judgment against it, to adduce evidence raising a fact issue concerning its promissory estoppel defense. *Cf.* Gulf, Colorado & Santa Fe Railway Co. v. McBride, 159 Tex. 442, 322 S.W.2d 492 (1958).

█ The doctrine of promissory estoppel as applied in Wheeler v. White, *supra,* is expressed in the Restatement, Contracts, § 90, in these words:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

Professor Corbin finds the phrase, promissory estoppel, "objectionable," Corbin on Contracts, § 204, but he recognizes the soundness of the principle of the Restatement rule under the title, "Reliance on a Promise." Corbin, *supra,* §§ 193–209 (1963). The Restatement expressly recognizes in § 178, comment f, that the doctrine may operate to preclude a defense based on the statute of frauds, in these words:

"Though there has been no satisfaction of the Statute, an estoppel may preclude objection on that ground in the same way that objection to the non-existence of other facts essential for the establishment of a right or a defence may be precluded. A misrepresentation that there has been such satisfaction if substantial action is taken in reliance on the representation, precludes proof by the party who made the representation that it was false; *and a promise to make a memorandum, if similarily relied on, may give rise to an effective promissory estoppel if the Statute would otherwise operate to defraud."* [1]

With the foregoing rules of procedure and substantive law in mind, we here summarize the summary judgment evidence which "Moore" Burger contends raises the necessary fact issues.

In 1959, "Moore" Burger, as lessee, and the City of Austin, as lessor, entered into a five-year lease of a small tract of land on Guadalupe Street in Austin, the tenancy to begin on the 1st day of July, 1959, and to end on the 30th day of June, 1964, with an option in the lessee to renew the lease for an additional five-year term. "Moore" Burger built a small restaurant on the property and began to do business there.

Dowd and Craus were in the real estate business. Part of their business was to buy property and sell it to oil companies for service station sites. They learned that Phillips Petroleum Company was interested in securing a site on Guadalupe Street. The Ing Estate owned a small tract of land which adjoined the City tract. In 1967, Dowd and Craus obtained an option from the Ing heirs to purchase their property. During this period, the City of Austin became interested in selling the tract it had leased to "Moore" Burger. Representatives of the City contacted W. D. Scallon, Jr., President of "Moore" Burger, to let him know the City wished to sell and that the fact that "Moore" Burger had a going business on the property would be considered if it wished to bid. Scallon secured potential commitments to finance the purchase. In the meantime, Dowd and Craus learned of the possible sale of the City tract and of "Moore" Burger's interest in the purchase of the land. Scallon testified in his deposition that Craus approached him to negotiate regarding the possibility of "Moore" Burger leasing from Dowd and Craus if they purchased the City tract. The plan was that if "Moore" Burger would refrain from bidding on the property, Dowd and Craus would purchase the City tract and the adjoining Ing tract and would then build a new building on the

---

Ing tract and would lease it to "Moore" Burger for a term of twenty years. Craus and Scallon went to Craus' attorney who drew up an agreement to lease and a lease. Then Scallon took the lease to his attorney who made some changes. Scallon signed the agreements and took them to Craus, who said that he and his associates accepted the agreements, and that their attorney, Kemp, who was their trustee, would sign them. Scallon then advised the City that "Moore" Burger had a lease agreement and would not be bidding on the property. The entire time these negotiations were going on, Dowd and Craus had a contract to sell the property to Broadway Oil Company which planned to build a service station for Phillips Petroleum Company. Phillips later bought this contract of sale from Broadway Oil Company.

After the lease agreement was accepted by Dowd and Craus, Scallon and his attorney had some trouble contacting the trustee. When they did get in touch with him, they told him that if he did not sign the lease they would bid on the property. The trustee told them the terms were all accepted by Dowd and Craus and that he would sign the lease. Relying on these promises, "Moore" Burger did not bid. However, the lease was never signed by Dowd or Craus or their trustee.

Dowd and Craus purchased the City tract in September of 1967 and sold both the City tract and the adjoining Ing tract to Phillips in February, 1968, five months later. When "Moore" Burger communicated with Phillips about their alleged lease, Phillips denied any knowledge of it and refused to build the new restaurant or in any way to perform the obligations of the lease. Phillips continued to accept payment of rentals made by "Moore" Burger, but held each check until June, 1969, when it presented all fifteen checks to the bank for payment. The checks were returned for insufficient funds; and in July of 1969, after suit in the nature of forcible detainer, "Moore" Burger vacated the property.

The foregoing recitation of summary judgment evidence is legally sufficient to raise fact issues that: (1) the promisors should reasonably have expected that their promise to sign the lease (2) would induce "Moore" Burger to forbear bidding on the City property (3) which was a forbearance of a definite and substantial character (4) induced by the promise, and (5) that injustice to "Moore" Burger can only be avoided by enforcement of the promise. See Cooper Petroleum Co. v. LaGloria Oil and Gas Co., 436 S.W.2d 889, 896 (Tex.1969).

Respondents argue that the doctrine of promissory estoppel, although approved and applied in Wheeler v. White and *LaGloria*, should not be extended to Article 3995, subdivision 4 cases, so as to enforce contracts for the sale of land, or for the lease of land for a term of more than one year, in the absence of proof of the (1) taking of possession, (2) furnishing of consideration, and (3) making of valuable improvements, as required by the rule of Hooks v. Bridgewater, *supra*. But the court recognized in Hooks v. Bridgewater that subdivision 4 contracts may be enforced if application of the statute "would, itself, plainly amount to a fraud." 229 S.W. 1116. That basis for enforcing subdivision 4 contracts has been subsequently accepted and applied. See Texas Co. v. Burkett, 117 Tex. 16, 296 S.W. 273, 278 (1927); Matthewson v. Fluhman, 41 S.W.2d 204, 206 (Tex.Com.App.1931, jdgmt adopted). If the evidence tendered in this case by "Moore" Burger be accepted as true, enforcement of the statute of frauds "would, itself, plainly amount to a fraud" on "Moore" Burger's rights. We hold, therefore, that as to Dowd and Craus the take-nothing summary judgment was erroneously rendered and must be reversed.

We consider now Phillips' summary judgment that "Moore" Burger take nothing. Although it is the general rule that a stranger to a contract cannot invoke the statute of frauds, Murphy v. Johnson, 439 S.W.2d 440, 443 (Tex.Civ.App.—Hous-

ton 1st 1969, no writ), the plaintiff in this case seeks to enforce its contract against Phillips, and Phillips' position is similar to that of a purchaser of land whose grantor has previously made a contract to sell to another. In a suit by that other, the courts uniformly hold that the purchaser may assert the defenses which his grantor had. Masterson v. Little, 75 Tex. 682, 13 S.W. 154 (1890); Sanborn v. Murphy, 86 Tex. 437, 25 S.W. 610 (1894); Franzetti v. Franzetti, 124 S.W.2d 195 (Tex.Civ.App.—Austin 1939, writ ref'd); 49 Am.Jur. 899, Statute of Frauds § 592.

The summary judgment evidence which we have held sufficient to raise fact issues of promissory estoppel against the statute of frauds defense of Dowd and Craus, will not avail against the same defense asserted by Phillips unless it shows something more than a promise by Dowd, Craus or their trustee, reliance thereon and detriment. Phillips made no promises on which "Moore" Burger relied and acted to its detriment; and while it is the general rule that an estoppel of a grantor runs against his grantee, Wickwire-Mitchell Royalty Trust v. Taylor, 200 S.W.2d 441 (Tex.Civ.App.—Texarkana 1947, no writ); 28 Am.Jur.2d 776, Estoppel and Waiver § 117, a bona fide purchaser for value and without notice of an estoppel against his grantor is not bound by it. 28 Am.Jur.2d 776, *Estoppel and Waiver* § 117. To avoid Phillips' statute of frauds defense, therefore, "Moore" Burger had the burden of producing evidence that Phillips had actual or constructive notice of the requisite facts which operated as an estoppel against Dowd and Craus.

There is in the record no summary judgment evidence that Phillips had actual notice of the estoppel against Dowd and Craus, and "Moore" Burger does not assert there is; rather, "Moore" Burger contends that it was in possession of the City tract when Phillips purchased the property, and that Phillips is charged in law with constructive notice of such facts as would have been revealed had inquiry been made of "Moore" Burger concerning its rights in that tract. Our decisions sustain that position, and it matters not that the lease from the City to "Moore" Burger, then of record, showed that "Moore" Burger's possession began as that of a tenant of the City. Burford v. Pounders, 145 Tex. 460, 199 S.W.2d 141 (1947); Collum v. Sanger Bros., 98 Tex. 162, 82 S.W. 459, 83 S.W. 184 (1904); Ramirez v. Smith, 94 Tex. 184, 59 S.W. 258 (1900); Aldridge v. North East Independent School Dist., 428 S.W.2d 447 (Tex.Civ.App.—San Antonio 1968, writ ref'd).

But Phillips argues that it should be charged with notice of only those facts which inquiry would have revealed concerning "Moore" Burger's rights in the City tract since "Moore" Burger was not in possession of the Ing tract. We disagree. We hold that Phillips should be charged with constructive notice of such facts concerning the contract with Dowd and Craus as would in reasonable probability have been revealed upon inquiry concerning "Moore" Burger's rights. We hold, further, that, considering the summary judgment evidence heretofore detailed and the reasonable inferences therefrom, a jury could reasonably conclude that in all reasonable probability the lease agreement covering both tracts and "Moore" Burger's reliance thereon and failure to bid, would have been revealed had Phillips made inquiry concerning "Moore" Burger's rights in the City tract. Having so held, we need not consider nor decide whether the agreement to build on its Ing tract and lease to "Moore" Burger is a covenant running with the land.

We need not, and do not decide at this stage of the suit what relief may be granted if "Moore" Burger establishes the defendant's liability in a conventional trial—whether specific performance, loss of profit damages and exemplary damages, or only reliance damages. "Moore" Burger's petition seems primarily to allege a cause of action for fraud and deceit, but we have

treated the case on this appeal, as have the parties, as strictly one for damages for breach of contract or specific performance. The nature of the relief to be granted will become important only if liability is established.

We noted in the forepart of this opinion that summary judgment was also rendered awarding Phillips a recovery of rentals in the sum of $3,500.00. That part of the summary judgment has not been questioned by "Moore" Burger in either the court of civil appeals or this court. Under the circumstances, severance and affirmation of that part of the judgment could perhaps be ordered. On the other hand, Phillips has not sought such relief, and it does not appear that reversal of the entire judgment will prejudice the rights of Phillips to a recovery of rentals when the entire case is tried.

The judgments of the court of civil appeals and trial court are reversed and the cause is remanded to the trial court.

WALKER, J., not sitting.

ON MOTION FOR REHEARING

REAVLEY, Justice.

Respondents read the Court's opinion to make any promise enforceable, though within the proscription of the statute of frauds, if foreseeable action or forbearance by the promisee meets the requirements of Section 90 of the Restatement of Contracts (or fulfills Section 217A of the Restatement, Second, Supp.Tent.Draft No. 4, 1969). This is not the holding.

The promise which is determinative here is the promise to sign a written agreement which itself complies with the statute of frauds. No other promise was discussed by the Court in the recitation of the summary judgment evidence, whereas promises to sign were set forth at two points, followed by the recitation that, relying on *these promises,* "Moore" Burger did not bid at the sale of the City land. This is

the significance of the emphasis upon Section 178, comment f, Restatement, Contracts, and the citation to Cooper Petroleum Co. v. La Gloria Oil and Gas Co., 436 S.W.2d 889, 896 (Tex.1969), where "the promise was to sign a written guaranty, and a written guaranty would have been enforceable." See also 3 Williston, Contracts § 533A at 786 (3d ed. Jaeger 1957) ; Comment, Agreements to Reduce To Writing Contracts within the Statute of Frauds, 15 Va.L.Rev. 553 (1929).

The motions for rehearing are overruled. The parties are given fifteen days in which to file further motions for rehearing.