Tom Sonnichsen v. Baylor University















IN THE
TENTH COURT OF APPEALS
 

No. 10-99-195-CV

     TOM SONNICHSEN,
                                                                         Appellant
     v.

     BAYLOR UNIVERSITY,
                                                                         Appellee
 

From the 170th District Court
McLennan County, Texas
Trial Court # 97-421-4
                                                                                                                
                                                                                                         
O P I N I O N
                                                                                                                

      Tom Sonnichsen was the head coach for the women’s volleyball team at Baylor University. 
When Baylor terminated his employment, Sonnichsen sued the University for breach of contract
and fraud. Baylor filed a motion for summary judgment claiming that Sonnichsen’s contract and
fraud claims were barred by the statute of frauds. See Tex. Bus. & Com. Code Ann. § 26.01
(Vernon 1987). Baylor also argued that summary judgment was appropriate on the contract claim
because there was no meeting of the minds as to the terms of the alleged contract. In response to
the motion for summary judgment, Sonnichsen amended his original petition to add promissory
estoppel as a counter-defense to the statute of frauds. Baylor amended its motion for summary
judgment to expand its summary judgment evidence. The trial court granted summary judgment
against Sonnichsen on all his asserted claims. Sonnichsen appeals.
Summary Judgments
      A defendant who moves for summary judgment has the burden of establishing as a matter of
law that there is no genuine issue of fact as to at least one essential element of the plaintiff’s cause
of action or conclusively prove each element of an affirmative defense. Walker v. Harris, 924
S.W.2d 375, 377 (Tex. 1996) (citing “Moore” Burger, Inc. v. Phillips Petroleum Co., 492
S.W.2d 934, 936 (Tex. 1972) and City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671,
678 (Tex. 1979)). If the movant’s summary judgment evidence establishes an affirmative defense,
the burden shifts to the non-movant to produce evidence raising a fact issue concerning any
applicable counter-defense, in this case, promissory estoppel. See id. at 936-937. We view all
evidence favorable to the non-movant as true and indulge every reasonable inference in the non-movant’s favor. Walker, 924 S.W.2d at 377; Nixon v. Mr. Property Management Co., 690
S.W.2d 546, 549 (Tex. 1985). Thus, the non-movant only has to present some evidence of each
element of a counter-defense to avoid summary judgment. See “Moore” Burger, 492 S.W.2d at
937.
Promissory Estoppel
      In his first issue, Sonnichsen argues that the trial court erred in granting summary judgment
on his contract claim because his summary judgment evidence raised a material fact issue on the
counter-defense of promissory estoppel. Sonnichsen contends he presented evidence that Baylor
promised all head coaches two year written contracts and that he relied on that promise to his
detriment.
      Sonnichsen presented summary judgment evidence that representatives of Baylor orally
promised two year written contracts to Sonnichsen and other head coaches who currently were
employed under one year oral contracts. The statute of frauds provides that an agreement which
is not to be performed within one year of its making is not enforceable unless the agreement is in
writing and signed. Tex. Bus. & Com. Code Ann. § 26.10 (Vernon 1987). Neither party
disputes that the summary judgment evidence establishes the statute of frauds as a valid affirmative
defense in this case. The dispute arises as to whether Sonnichsen then established a fact issue on
each element of his counter-defensive plea of promissory estoppel.
      Sonnichsen claims that Baylor did not attack the validity of his plea of promissory estoppel. 
Baylor did not have the burden to negate estoppel because estoppel is a shield, not a sword. 
Collins v. Allied Pharmacy Management, 871 S.W.2d 929, 936 (Tex. App.—Houston [14th Dist.]
1994, no writ). As used in this case, promissory estoppel is a counter-defensive plea. See
“Moore” Burger, 492 S.W.2d at 936. The doctrine prevents a promisor from denying the
enforceability of the promise. Id.; Trammel Crow Co. No. 60 v. Harkinson, 944 S.W.2d 631, 636
(Tex. 1997). Thus, in some circumstances, promissory estoppel may be used to bar the
application of the statute of frauds and allow enforcement of an otherwise unenforceable oral
promise. See Nagle v. Nagle, 633 S.W.2d 796, 800 (Tex. 1982); “Moore” Burger, 492 S.W.2d
at 937.
      The parties agree that “Moore” Burger is the controlling case in this area of law; but disagree
as to its application. Baylor contends Sonnichsen has not met his burden under “Moore” Burger
because the summary judgment evidence is undisputed that no writing existed at the time the
promise for a two year contract was made. Sonnichsen argues that no writing was necessary under
“Moore” Burger. We disagree with Sonnichsen.
      In “Moore” Burger, a tenant was induced to refrain from bidding on the purchase of property
by individuals who promised to lease it to the tenant if they bought the property. The tenant
signed an agreement to lease and a lease prior to the sale of the property, but the prospective
purchasers did not, though they had promised to do so. Instead, once the promisors bought the
property, the promisors/purchasers sold it to a third party who refused to honor the lease. The
Court reversed the summary judgment because a fact issue was raised that: (1) the promisor should
have expected his promise would lead the promisee to some definite and substantial injury; (2)
such an injury occurred; and (3) the court must enforce the promise to avoid the injury. Nagle
v. Nagle, 633 S.W.2d 796, 800 (Tex. 1982); “Moore” Burger, 492 S.W.2d at 937.
      Sonnichsen interprets “Moore” Burger as allowing the enforcement of an oral promise not yet
reduced to writing. We believe this interpretation is too broad. The Supreme Court even felt the
original opinion could be construed as being too broad and narrowed its holding in the opinion on
rehearing. There, the Court noted:
Respondents read the Court’s opinion to make any promise enforceable, though
within the proscription of the statute of frauds if foreseeable action or forbearance by the
promisee meets the requirements of Section 90 of the RESTATEMENT OF
CONTRACTS (or fulfills Section 217A of the RESTATEMENT, SECOND, Supp. Tent.
Draft No. 4, 1969). This is not the holding.
 
The promise which is determinative here is the promise to sign a written agreement
which itself complies with the statute of frauds. No other promise was discussed by the
Court..., whereas promises to sign were set forth at two points, followed by the recitation
that relying on these promises, “Moore” Burger did not bid at the sale of the City land. 
This is the significance of the emphasis upon Section 178, comment f, RESTATEMENT,
CONTRACTS, and the citation to Cooper Petroleum Co. v. La Gloria Oil and Gas Co.,
436 S.W.2d 889, 896 (Tex. 1969), where “the promise was to sign a written guaranty,
and a written guaranty would have been enforceable.” (emphasis in original).

“Moore” Burger, 492 S.W.2d at 940 (op. on reh’g). Both “Moore” Burger and La Gloria, which
the “Moore” Burger Court cited, involved promises to sign documents already in existence. 
Those cases did not involve a promise to sign a document that had not been reduced to writing as
in Sonnichsen’s case. 
      The Supreme Court reaffirmed “Moore” Burger’s narrow exception to the statute of frauds 
ten years later. See Nagle, 633 S.W.2d at 800. In Nagle, the appellant had scheduled a contempt
hearing for her former husband’s failure to pay child support. On the morning of the hearing, the
appellant proposed to her former husband that she would forgo the contempt proceeding and waive
one month’s child support if he transferred his one half interest in the family home to the
appellant, pay the remaining back child support, and increase his child support payment by the
amount of the mortgage on the home. The former husband orally agreed to the proposal and the
hearing was canceled. Later the same day, he told the appellant he would not transfer his interest
in the house. The Supreme Court affirmed the lower court’s holding that promissory estoppel was
not applicable. Id. There was no finding that the former husband had ever promised to sign an
existing instrument complying with the statute of frauds. Id.
      Three courts of appeals have made statements which could be construed to mean that
promissory estoppel can be raised even if the promise to sign a written agreement was made before
the agreement was reduced to writing. See, e.g., Cobb v. West Texas Microwave Co., 700
S.W.2d 616 (Tex. App.—Austin 1995, writ ref’d n.r.e.); EP Operating Co. v. MJC Energy Co.,
883 S.W.2d 263 (Tex. App.—Corpus Christi 1994, writ denied); Levine v. Lama Corp., 661
S.W.2d 779 (Tex. App.—Fort Worth 1983, no writ). In EP, the parties were still negotiating and
had not agreed on the material terms of the purported contract. In Levine, there was no evidence
the party relied on the promise. Thus, in EP and Levine, the courts’ holdings did not turn on the
issue of whether a writing which would comply with the statute of frauds was in existence at the
time the promise to sign it was made. In Cobb, the court determined there was some evidence that
each defendant had promised to sign an agreement which complied with the statute of frauds. 
Thus, even with no writing in existence at the time of the promise to sign the writing, the court
applied the promissory estoppel counter-defense and reversed the trial court’s application of the
statute of frauds. 
      We decline to join the references or holdings of these courts that the writing need not be in
existence at the time the promise to sign it is made. The holding from “Moore” Burger is clear. 
To invoke the application of promissory estoppel where there is an oral promise to sign an
agreement, the agreement which is the subject of the oral promise must comply with the statute
of frauds. That is, the agreement must be in writing at the time the oral promise to sign is made. 
See Mann v. NCNB Tex. Nat’l Bank, 854 S.W.2d 664, 668 (Tex. App.—Dallas 1992, no writ);
see also River St. Dev. I v. Mathis, No 05-95-01013-CV (Tex. App.—Dallas June 20, 1996, writ
denied) (not designated for publication).
      The summary judgment evidence does not show that a writing encompassing a two-year
contract was in existence at the time the representation was made that all head coaches would
receive two year written contracts. Sonnichsen failed to sustain his burden in raising a fact issue
regarding his promissory estoppel counter-defense. Thus, the trial court did not err in granting
summary judgment on Sonnichsen’s contract claim. Sonnichsen’s first issue is overruled. 
      In his third issue, Sonnichsen contends his summary judgment proof was sufficient to raise
a material fact issue as to whether the parties came to a “meeting of the minds” as to the terms of
the contract. Because we have overruled Sonnichsen’s contract claim, we do not reach this issue.
Fraud
      In his second issue, Sonnichsen questions whether Baylor’s statute of fraud defense also
defeated, as a matter of law, his cause of action for fraud. In its first amended motion for
summary judgment, Baylor stated, “When a plaintiff’s fraud claim is based on an alleged oral
promise, and the promise itself cannot be established because of the statute of frauds, the fraud
is likewise barred by the statute of frauds.” 
      However, the nature of the injury usually determines whether contract or tort duties were
breached. Jim Walter Homes, Inc. v. Reed, 711 S.W.2d 617, 618 (Tex. 1986); Webber v.
Kellogg, 720 S.W.2d 124, 129 (Tex. App.—Houston [14th Dist.] 1986, writ ref’d n.r.e.). “When
the injury is only the economic loss to the subject of the contract itself, the action sounds in
contract alone.” Reed, 711 S.W.2d at 618. Thus, the statute of frauds bars a fraud claim when
a plaintiff claims as damages the benefit of the bargain that he would have obtained had the
promise been performed. Carr v. Christie, 970 S.W.2d 620, 624 (Tex. App.—Austin 1998, writ
denied); Leach v. Conoco, 892 S.W.2d 954, 960 (Tex. App.—Houston [1st Dist.] 1995, writ
dism’d w.o.j.); Collins v. Allied Pharmacy Management, 871 S.W.2d 929, 936 (Tex.
App.—Houston [14th Dist.] 1994, no writ). If a plaintiff was allowed to recover the benefit of
a bargain already barred by the statute of frauds, the statute of frauds would become meaningless. 
See Nagle v. Nagle, 633 S.W.2d 796, 801 (Tex. 1982).
      Baylor did not file a “no-evidence” summary judgment motion. See Tex. R. Civ. P. 166a(i). 
Under the rules applicable to traditional summary judgment motions, as the defendant moving for
summary judgment, Baylor had the burden of establishing as a matter of law that there is no
genuine issue of fact as to at least one essential element of the plaintiff’s cause of action or
conclusively prove each element of an affirmative defense. Baylor chose to assert the statute of
frauds defense. It was Baylor’s burden to prove that the damages Sonnichsen was seeking for
fraud were the same damages sought for breach of contract, i.e., benefit of the bargain. Baylor
did not present summary judgment evidence to show that Sonnichsen’s claimed damages for fraud
were limited to benefit of the bargain. Thus, Baylor did not conclusively prove the affirmative
defense of statute of frauds to Sonnichsen’s fraud cause of action. Sonnichsen’s second issue is
sustained.
Conclusion
      The summary judgment granted to Baylor as to Sonnichsen’s contract claim is affirmed. 
Because we have sustained Sonnichsen’s second issue, the summary judgment granted as to
Sonnichsen’s fraud claim is reversed, severed from the contract claim, and remanded to the trial
court for further proceedings consistent with this opinion.

                                                                         TOM GRAY
                                                                         Justice

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Affirmed in part and Reversed, severed and remanded in part
Opinion delivered and filed April 27, 2001
Publish



.28 (Vernon 1977). When the defendant
executes the bail bond, “he shall at once be set at liberty.” Id. 17.29(a) (Vernon 1977).
      From the above-cited statutes, two principles appear: (1) the defendant must personally sign
the bail bond; and (2) he must be released immediately. However, the Institutional Division of
the Department of Criminal Justice (TDCJ) has no authority to release a prisoner on bail. Rather,
TDCJ can release an inmate on:
      (1)  completion of sentence; Id. 42.10 (Vernon 1979), 43.13 (Vernon Supp. 2003); Tex.
Gov’t Code Ann. § 493.025 (Vernon Supp. 2003);
 
      (2)  pardon; Tex. Code Crim. Proc. Ann. art. 48.03 (Vernon Supp. 2003);
 
      (3)  parole or mandatory supervision; Tex. Gov’t Code Ann. § 493.025;
 
      (4)  a bench warrant; Tex. Code Crim. Proc. Ann. art. 24.13 (Vernon 1989), art.
56.12(a)(2) (Vernon Supp. 2003); or
 
      (5)  a writ of attachment. Id.

      In addition to the fact that no statute permits TDCJ to release an inmate on bail, TDCJ cannot
release an inmate on:
      (1)  an arrest warrant until he discharges his sentence or has been approved for release on
parole or mandatory supervision; Tex. Gov’t Code Ann. § 493.0145 (Vernon Supp.
2003); or
 
      (2)  an INS deportation warrant until he discharges his sentence or has been approved for
release on parole or mandatory supervision; Id.§ 493.015 (Vernon 1998).

      The only way by which the requisites of chapter 17 (governing bail) can be satisfied and an
inmate released from prison to make bail is by issuance of a bench warrant. Issuance of a bench
warrant authorizes TDCJ to release an inmate to the custody of the sheriff or other law
enforcement agent. See Tex. Code Crim. Proc. Ann. art. 56.12(a)(2). This officer can then
transport the inmate to the trial court where he can make bail under the procedures set out in
Chapter 17, as modified by Chapter 44.
Ripeness
      The State cites Waco Independent School District v. Gibson for the proposition that Keeter’s
request for a bench warrant is not ripe. 22 S.W.3d 849 (Tex. 2000). We agree with the State that
the jurisdictional requirement of ripeness applies to mandamus cases. See Perry v. Del Rio, 66
S.W.3d 239, 252 (Tex. 2001) (orig. proceeding). However, “a claim’s lack of ripeness when
filed is not a jurisdictional infirmity requiring dismissal if the case has matured.” Id.
      To the extent that this Court’s withdrawal of its January 8 opinion rendered Keeter’s bench
warrant request moot for the moment, the claim matured to ripeness sixteen days later when the
State failed to file a motion for rehearing. See Tex. Code Crim. Proc. Ann. art. 44.04(h); Tex.
R. Crim. Post Trial & App. P. 209(c) (repealed 1986). Thus, we reject the State’s claim that
Keeter’s request is not ripe. See Perry, 66 S.W.3d at 252.



APPLICATION
Ministerial Duty
      Keeter properly filed his motion for bench warrant with the district clerk. The district clerk
has advised a member of Keeter’s family that Respondent is aware of the motion but does not
intend to rule on it.


 Thus, the only question to be resolved is whether Respondent has failed to
rule on the motion within a reasonable period of time. See Chavez, 62 S.W.3d at 228; Barnes,
832 S.W.2d at 426.
      Under article 44.04(h), Keeter has a “clear and indisputable” “right to release” on bail which
attached on April 19, 2003, which was sixteen days after this Court issued its opinion. See Tex.
Code Crim. Proc. Ann. art. 44.04(h); Tex. R. Crim. Post Trial & App. P. 209(c) (repealed
1986). A trial court “has no discretion” to deny bail to a defendant entitled thereto under article
44.04(h). Ex parte Anderer, 61 S.W.3d 398, 400 (Tex. Crim. App. 2001).
      As explained hereinabove, a bench warrant is the only means by which an imprisoned
appellant can make bail following the reversal of his conviction. Over two months have passed
since Keeter’s right to release attached. Accordingly, we conclude that Respondent has failed to
rule on Keeter’s motion for bench warrant within a reasonable period of time.
Adequate Legal Remedy
      An application for writ of habeas corpus is another legal remedy available to Keeter. See
Banales v. Ct. of Apps. for the 13th Dist., 93 S.W.3d 33, 36 (Tex. Crim. App. 2002) (orig.
proceeding). However, “[a] technically available legal remedy will not defeat a petitioner’s
entitlement to mandamus relief when the remedy is ‘so uncertain, tedious, burdensome, slow,
inconvenient, inappropriate or ineffective as to be deemed inadequate.’” In re Davis, 990 S.W.2d
455, 457 (Tex. App.—Waco 1999, orig. proceeding) (quoting State ex rel. Holmes v. Ct. of Apps.
for the 3d Dist., 885 S.W.2d 389, 394 (Tex. Crim. App. 1994) (orig. proceeding) (quoting Smith
v. Flack, 728 S.W.2d 784, 792 (Tex. Crim. App. 1987) (orig. proceeding))). Applying this
standard, we conclude that habeas is not an “adequate” legal remedy under the circumstances of
Keeter’s case.
CONCLUSION
      The law imposes a ministerial duty on Respondent to consider and rule on Keeter’s motion
for bench warrant within a reasonable period of time. Respondent has failed to do so. Keeter has
no other adequate legal remedy. Accordingly, we conditionally grant the requested writ. The writ
will issue if Respondent fails to advise this Court in writing within fourteen days after the date of
this opinion that he has ruled on Keeter’s motion for a bench warrant.
 
                                                                   REX D. DAVIS
                                                                   Chief Justice

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
      (Justice Gray dissenting)
Writ of mandamus conditionally granted
Opinion delivered and filed June 25, 2003
Publish
[CR25]